IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RONALD W. GROVES,
DONALD C. MANN

    Defendants.

No.  CR-S-07-229 FCD (GGH)

No.  CR-S-09-409 EJG (GGH)

MEMORANDUM RE: DETENTION

        During the motion for pre-trial release revocation on account of obstruction of justice, the undersigned found that compelling defendants to choose between their potential Fifth Amendment or other constitutional rights and liberty pre-trial was justifiable in the circumstances of the two criminal cases pending against defendants.  The undersigned issues this memorandum to state in a more articulate fashion the bases for his legal ruling.  This memorandum is not intended to address all aspects of the detention hearing which are fully set forth in the record.

        By way of general background, defendants Mann and Groves were indicted for wire fraud in CR-07-229 FCD.  This case was proceeding to trial when defendants, and these facts are undisputed, filed UCC liens and other slander of title/false claims documents against property

1

ostensibly possessed by the prosecutor (and one relative), and FBI witnesses.  Defendants also filed a civil suit against the prosecuting government officials/agents/witnesses as well in the District of Columbia court to enjoin, among other relief sought, the continuation of the criminal action in this district.  Thereafter on September 19, 2009, an indictment was returned in CR-09-409 EJG charging defendants with four violations of 18 U.S.C. § 1521 (filing false claims or slandering title on account of performance of official duties) and one count of obstruction of justice, 18 U.S.C. § 1503.[1]

The government's request to detain defendants in the 2009 action as well as the 2007 action came on for hearing on September 24 and 30, 2009.  The detention request in the 2007 action was premised on 18 U.S.C. § 3148 – sanctions for violation of release conditions in that action.  Because any order of detention, if ordered at all, was more easily obtained under § 1348, the court first proceeded under that basis for detention.  Under § 1348 in pertinent part, if there is probable cause to believe that a released defendant has committed a crime, *and* based on traditional factors, the court finds that release would endanger the community or provide for flight, *or* if the court finds that the charged defendant is unlikely to abide by any set condition of release, the court *shall issue an order revoking pretrial release.*

On September 19, 2009, the grand jury found that defendants' actions in filing liens were the type of retaliatory actions precluded by the statute (§ 1521) and that defendants had obstructed justice.  This grand jury determination established without dispute the first factor of probable cause to believe a crime had been committed while on pretrial release.  With respect to the second factors, the government argued that defendants be detained because their false claims/liens retaliatory actions obstructed justice, and that defendants could not be trusted not to

---

[1] Congress finally recognized in 2008 the detrimental and obstructive nature of retaliation suits against those government officials engaged in the prosecution of criminal actions, or otherwise engaged in the performance of official duties.  As discussed at hearing, there is no doubt that such retaliatory actions create real and substantial impediments to the performance of such governmental duties.

continue with their obstructive, criminal tactics if allowed release.  The government argued as well that defendants' action in connection with their civil suit constituted obstructive tactics which required the detention of defendants pretrial.

The undersigned was of the impression however, that if defendants were willing to expunge the liens which they had filed, and were willing to dismiss their civil actions, and take no more retaliatory filing actions, that the danger of future obstruction of justice tactics, i.e., intimidating the prosecutor and FBI witnesses, would be minimized.

Somewhat inconsistently, the government was concerned that any order by the undersigned to defendants, if released again pretrial, to not further engage in criminal activity, i.e., not further their initial retaliatory, criminal activity, might run afoul of the Fifth Amendment. That is, if the court ordered defendants to expunge their liens or not continue with a civil action which was clearly designed to retaliate against the prosecuting officials and obstruct justice herein, defendants might be admitting the illegality of their initial behavior.[2]  At hearing, the undersigned, perhaps with some inarticulateness, stated that because the court was compelling the actions by imposing these conditions, there could be no Fifth Amendment violation.  The remainder of this memorandum addresses that issue.

First, the condition requirements of expungement/dismissal would not be considered testimonial.  The initial crime, if one has been committed, would be the filing of the liens, and perhaps the filing of the civil retaliatory, obstructive  lawsuit.  There is nothing testimonial about the expungement of the liens or dismissal of the lawsuit.  No statements have to be made by defendants as to why they are performing such acts, and indeed, there could be many reasons for so doing.  The requirements imposed by the court as a condition of release – to expunge the liens and dismiss the lawsuit, are no more testimonial than the condition of

---

[2] The government did not desire to see defendants released under any conditions because it desired a ruling that there were no conditions or combinations of conditions which might lessen the obstruction/intimidation potential posed by release of defendants.

3

1  supervised release at issue in United States v. Rodriguez-Rodriguez, 441 F.3d 767, 771-73 (9th
2  Cir. 2006), where the supervisee was required to report into the probation office if he again
3  entered the country (and the undocumented alien would be committing a crime by so entering).
4  Because the supervisee could invoke his right to remain silent when he got to the probation office,
5  his Fifth Amendment rights were preserved. This was so even though an immediate arrest for
6  entering the country illegally was inevitable by his very action of complying with the conditions of
7  supervised release.

8  Of course, a court cannot in the abstract order a defendant to incriminate himself
9  and then find that there is no potential violation of the Fifth Amendment because of the order.
10 However, the issue here is different – whether a defendant can be compelled as a condition of
11 pretrial release not to engage in further criminal activity (regardless of Fifth Amendment
12 implications) in return for not being allowed to remain free pending prosecution of a criminal
13 action.  The answer affirming the court's ability to do so flows naturally from the statement of the
14 issue.

15 When seeking pretrial release, a defendant will often have to choose between not
16 being able to exercise otherwise available Constitutional rights and freedom from incarceration.
17 A court often imposes "non-contact" conditions in derogation of one's overall First Amendment
18 right to associate. A defendant's ability to travel is nearly always restricted or precluded pending
19 adjudication of a criminal action. Ones' right to possess firearms is almost always completely
20 restricted during the pendency of a criminal action when one is released on conditions involving
21 pretrial supervision. One's right to be free from searches of person and property without warrants
22 in violation of the Fourth Amendment can be greatly circumscribed during pretrial release. It
23 should come as no surprise, therefore, that one's right to petition the government for redress of
24 grievances, i.e., file liens and civil actions, or to continue with such actions, can be limited as
25 well, especially in situations where not to be so limited would permit the furtherance of criminal
26 activity.

However, the fact that a defendant's exercise of constitutional rights may be limited or precluded on pretrial release does not completely resolve the Fifth Amendment issue posed above – that is – what if the condition of pretrial release, if accepted by the defendant, could be construed as an admission in whole or in part of criminal activity. The undersigned understands the elementary proposition that a defendant could not be ordered to "come clean" with the FBI in a post-release interview as a condition of pretrial release. But the court also understands that one cannot be allowed to commit crimes, or not be permitted to further criminal activity already commenced, because to cease such conduct could be viewed as an admission. See Rodriguez-Rodriguez, supra. Our system of justice is not so perverted so as to sanction the commission of crimes in order to serve the abstract purpose of the Fifth Amendment.

A basic example removed from the facts of this case illustrates the limits of Fifth Amendment reach very well. Persons indicted for being a felon in possession of a firearm, 18 U.S.C. § 922(g), often appear before the undersigned, and if released on conditions, are invariably released on the condition to divest onself of all firearms/ammunition and provide proof of same to pretrial services. An appearing defendant might well have possession or access to firearms other than ones seized in connection with his being charged as a felon in possession. Theoretically, a defendant could initially argue that by divesting himself of other firearms and in providing proof of same, he is in fact incriminating himself with further § 922(g) crimes, as well as providing evidence useful to the government in the underlying indicted crime. Even assuming that the divestment would be testimonial (and it is not under the above reasoning), the defendant is forced to choose between pretrial release and possible self-incrimination occasioned by his giving up firearms. But only the most unreasonable view of the Fifth Amendment right would posit that a court could not order a defendant not to engage in further crime, here the possession of firearms by a felon, in order to preserve unlimited one's Fifth Amendment rights. A defendant who chose to make such an extreme argument would no doubt be viewed as desiring to commit crimes while out on release and would be placed in detention status pending resolution of the

criminal case.³

There are times, of course, when one must choose between not exercising Fifth Amendment rights or suffering the consequences if it is invoked. For example, in a civil action, the court may instruct the jury as to an adverse inference if one raises his Fifth Amendment rights in an attempt to avoid testimony. <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318, 96 S.Ct. 1551 (1976). Even in the criminal action itself, one must choose between exercising Fifth Amendment rights and testifying which, of course, gives the prosecution the right to cross-examine. Similarly, one must at times weigh the compelling need for a condition of release not permitting the continuation of a crime with any adverse self-incrimination inferences which may result therefrom.

The principle here is no different. Congress has made it a crime to engage in retaliatory false claims and slander of title acts against those government and judicial officials engaged in prosecuting/adjudicating crimes. Congress has made it clear that one cannot obstruct justice while out on pretrial release – and filing retaliatory civil actions obstruct justice. Maintaining the liens, including their self-executing enforcement, which logically has a continuing intimidation effect on government officials, is a furtherance of the criminal activity precluded by Congress. Filing retaliatory, frivolous civil actions comprise the same sort of obstructive actions. Compelling a person to stop the furtherance of criminal activity by giving up the liens (make them unenforceable), or to not further engage in a retaliatory civil action, is no different from ordering the gun possessor to give up his guns as a condition of pretrial release. There is no Fifth Amendment violation in either situation.

In sum, the conditions imposed by the undersigned were not testimonial in violation of the Fifth Amendment, and even if they were, defendants had to choose to not further

---

³ Another example is the defendant who is ordered to undergo drug treatment for methamphetamine addiction as a condition for release when the underlying crime for which he is indicted is methamphetamine trafficking. One could theoretically argue that the defendant's "compelled" consent (admission) as to the need for drug treatment in lieu of detention establishes his connection with the methamphetamine drug trade, but no defense counsel appearing before the undersigned has objected to this condition on Fifth Amendment grounds.

6

1  an already existing crime, or to remain in detention.

2        At hearing, defendants indicated that they would be willing to expunge all vestiges
3  of their liens, but that they desired to continue with their [retaliatory] civil action.  They were
4  therefore ordered detained in the 2007 action.  The matter of detention in the 2009 action
5  therefore became moot.

6  Dated: October 5, 2009

8            /s/ Gregory G. Hollows
9        United States Magistrate Judge

11 groves.det